## Carrey BARKER *v.* ROGERS GROUP, INC.

CA 00-985 45 S.W.3d 389

Court of Appeals of Arkansas
Division I
Opinion delivered May 16, 2001

*Jones & Granger,* by: *H. Chris Christy, Stephen B. Whiting,* and *Chester H. Lauck, III,* for appellant.

*Laser, Wilson, Bufford & Watts, P.A.,* by: *Sam Laser* and *Brian A. Brown,* for appellee.

SAM BIRD, Judge. This is a second appeal by appellant Carey Barker from the Faulkner County Circuit Court's grant of summary judgment in favor of appellee Rogers Group, Inc. Barker asks this court to overturn the acquired-immunity doctrine or, in the alternative, she argues that her complaint against Rogers alleged that Rogers performed its contractual responsibilities in a negligent manner. Barker also contends that the court's order granting summary judgment was in error because genuine issues of material fact existed. Rogers asks this court to dismiss Barker's appeal, contending that we lack subject-matter jurisdiction to hear it because Barker filed this appeal prematurely. We hold that we do have subject-matter jurisdiction. Therefore, we reach the merits of the case, and we affirm.

Rogers was awarded a contract by the Arkansas Highway and Transportation Department (AHTD) to resurface a portion of Arkansas Highway 65 in Faulkner County. The contract specified that Rogers was to use Type 3 asphalt in resurfacing the highway. In verifying that Rogers complied with the contract's specifications, AHTD monitored daily the application of the asphalt to the highway surface. The work was completed in September 1996 and was approved and accepted by the highway department.

Two years later, Barker was a passenger in Heath Loftin's vehicle, which was involved in a collision with a vehicle driven by James C. Evans on a part of Highway 65 that had been resurfaced by Rogers. The accident resulted in the death of Loftin and serious injuries to Barker. Barker contends that the accident was caused when Loftin's car hydroplaned because of the slick surface of the roadway due to the use of Type 3 asphalt.

On February 12, 1999, Barker filed suit against Rogers, Evans, and Loftin's estate. She alleged that Rogers was negligent in resurfacing the roadway with Type 3 asphalt, which it knew was dangerous; in failing to warn the driving public or public officials of the dangerous conditions; in failing to take steps necessary to cure the imminently dangerous conditions that it had created; in undertaking a project in which the wrong asphalt mix was called for; and in creating an unsafe condition, failing to warn and to cure the hazard.

Rogers filed an answer denying Barker's contentions and pleading the acquired-immunity doctrine as an affirmative defense. Marilyn K. Loftin, administratrix of Loftin's estate, filed a cross-claim against Rogers.

On June 28, 1999, Rogers filed a motion for summary judgment in which it maintained that it had acquired immunity because it was required to comply with the contract in which AHTD specified the use of Type 3 asphalt. In support of its motion for summary judgment, Rogers attached affidavits of C.W. McMillian, the resident engineer for AHTD on the project performed by Rogers, and Eddie Reidmueller, a quality control manager for Rogers.

In his affidavit, McMillian stated that the AHTD specified that Type 3 asphalt be used in the resurfacing project and that Rogers was required by the department to comply with the specifications. He stated that in addition to specifying the type of asphalt, the department specified the procedures used in preparing the surface and applying it. McMillian stated that it was his responsibility to oversee the project and to make sure that it met the specifications of the contract. He stated that had Rogers not been in compliance, he would have required Rogers to promptly correct the noncompliance. He then stated:

> The Department determined that Type 3 asphalt was suitable and appropriate for this job. Had Rogers Group employees advised the Department that they were informed that Type 3 asphalt was not suitable for this job, we would have told them that it was suitable and directed that they continue using Type 3 asphalt.

In his affidavit, Eddie Riedmueller stated that he was involved in Rogers's performance of the contract with AHTD regarding the resurfacing of part of Highway 65. He stated that an inspector with AHTD was present at the site everyday and that, periodically, a supervisor or an engineer would be present at the site to inspect the work. The supervisor or the engineer had the authority to order the correction of any defects that they found in the work. However, Riedmueller stated that AHTD never ordered any corrections pertaining to the asphalt. In addition, Riedmueller stated that Rogers had no input with AHTD concerning its choice of the type of asphalt to be used.

Barker responded to Rogers's motion, stating that she could show that Rogers was negligent in resurfacing the road and in using

Type 3 asphalt, which causes vehicles to hydroplane. She also contended that the affirmative defense of acquired immunity relied upon by Rogers is directly related to the accepted-work doctrine, which was abolished by the Arkansas Supreme Court in *Suneson v. Holloway Constr. Co.*, 337 Ark. 571, 992 S.W.2d 79 (1999). Therefore, she argued, Rogers could be liable for its negligence in using Type 3 asphalt. However, she presented no affidavits, deposition testimony, or any other evidence opposing Rogers's motion.

On August 18, 1999, the court granted summary judgment and dismissed Barker's complaint against Rogers with prejudice. The court held that the only allegation of negligence in Barker's complaint was that Rogers was negligent in using Type 3 asphalt, the material that AHTD required. Therefore, the court held that since Barker was not contending that Rogers was negligent in its performance of the contract, but, rather, that it was negligent in using Type 3 asphalt, Rogers acquired the immunity that the highway department would enjoy from tort liability.

Barker filed her first notice of appeal on September 7, 1999. On May 10, 2000, we dismissed Barker's first appeal because the order from which she appealed did not dispose of her claim against the Loftin estate and the Loftin estate's cross-claim against Rogers. The order dismissing the cross-claim by Loftin was entered May 1.

Our mandate dismissing Barker's first appeal for want of a final order was issued on May 31, 2000. On that same day, Barker filed her second notice of appeal. On June 1, 2000, our mandate dismissing Barker's first appeal was filed in Faulkner County Circuit Court. A final order disposing of Barker's claim against the Loftin estate and the Loftin estate's cross-claim against Rogers, and also granting Rogers's motion for summary judgment, was entered on June 2, 2000.

After the second notice of appeal was filed with this court, Rogers filed a motion asking us to dismiss Barker's second appeal, contending that the notice of appeal was filed too early and that this court lacked subject-matter jurisdiction. We denied the motion. Rogers, in its brief in the appeal at bar, renewed its motion to dismiss, asserting that this court lacked subject-matter jurisdiction because the circuit court did not reacquire jurisdiction until the mandate of this court was filed on June 1, and that since Barker's notice of appeal, filed May 31, was filed before the circuit court reacquired jurisdiction, the early filing made the notice invalid. We do not agree.

 Subject-matter jurisdiction is the power of a court to adjudge certain matters and to act on facts alleged. *Timmons v. McCauley*, 71 Ark. App. 97, 27 S.W.3d 437 (2000). Rule 5-3 of the Rules of the Supreme Court states:

> (a) *Mandate to be issued in all cases.* In all cases, civil and criminal, the Clerk will issue a mandate when the decision becomes final and will mail it to the clerk of the trial court for filing and recording. A decision is not final until the time for filing of petition for rehearing, or, in the case of a decision of the Court of Appeals, the time for filing a petition for review has expired or, in the event of the filing of such petition, until there has been a final disposition thereof.

 The supreme court recently addressed the question of when a mandate becomes final in *Barclay v. Farm Credit Servs.*, 340 Ark. 65, 68-69, 8 S.W.3d 517, 519 (2000), stating:

> It is axiomatic that this court takes jurisdiction of a matter once the record on appeal is filed with the Clerk of the Supreme Court. [The supreme court] loses jurisdiction to the trial court once the mandate is *issued* from this court to the trial court. A mandate is the official notice of the action taken by the appellate court. The mandate is directed to the trial court, and it instructs the court to recognize, obey, and execute the appellate court's decision. (Citations omitted and emphasis added.)

 Here, because the mandate was issued on May 31, becoming effective on that date rather than on the date it was filed with the circuit court, Barker's notice of appeal was not filed prematurely, and we have subject-matter jurisdiction to reach the merits of the case.

██ In reviewing a trial court's grant of summary judgment, we need only decide if the granting of the motion was appropriate based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Mashburn v. Meeker Sharkey Fin. Group, Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.* Summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to

summary judgment as a matter of law. *Id.* Once a moving party establishes a prima facie entitlement to the summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of its pleadings, but its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Ark. R. Civ. P. 52.

For her first point on appeal, Barker contends that because the supreme court in *Suneson v. Holloway Const. Co., supra,* abolished the accepted-work doctrine, this court should, based upon the reasoning in *Suneson,* abolish the acquired-immunity doctrine. We are not persuaded by Barker's argument that the supreme court's abolition of the accepted-work doctrine in *Suneson, supra,* also had the effect of abolishing the acquired-immunity doctrine. The accepted-work doctrine was based upon a different public policy and rationale than the acquired-immunity doctrine. The general rule of the accepted-work doctrine was that after the contractor turned the work over to and it had been accepted by the proprietor, the contractor incurred no further liability to third parties by reason of the condition for the work, but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. *Suneson v. Holloway Const. Co., supra.* This is not analogous to the case at bar. The acquired-immunity doctrine shields a contractor from damages resulting from its performance of the contract, where the contract has been performed in accordance with the terms of its contract with a governmental agency that is immune from tort liability. *Jordan v. Jerry D. Sweetser, Inc.,* 64 Ark. App. 58, 977 S.W.2d 244 (1998). The theory behind the acquired-immunity doctrine is that a contractor for a public agency shares the sovereign immunity of the public body from liability for damages necessarily involved in the performance of the contract. *Guerin Contractors v. Reaves Food Ctr,* 270 Ark. 710, 606 S.W.2d 143 (Ark. App. 1980). The acquired-immunity doctrine does not protect a contractor who performs work in a negligent manner, and such negligence results in damages to others. *Id.* At *Southeast Constr. Co. Inc. v. Ellis,* 233 Ark. 72, 77, 342 S.W.2d 485, 488 (1961), the supreme court stated the public policy rationale behind the acquired-immunity doctrine:

> If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force

for the purpose of interpreting these plans, and was not permitted to follow the orders of the engineering force of its superior, then the cost of public improvement would be so increased as to make them almost prohibitive.

■ Based upon the pleadings and affidavits, we find that the court did not err in granting summary judgment and finding that Rogers has acquired immunity by complying with the AHTD contract specifications, which required the application of Type 3 asphalt.

■ Barker also argues that this case falls within an exception to the acquired-immunity doctrine that applies when a person suffers damages as a result of the contractor's negligence in the performance of a contract with a public agency that is immune from liability for negligence. We do not find this exception to be applicable here because the theory of liability asserted in Barker's complaint is that Rogers was negligent in its use of Type 3 asphalt that was specified in its contract with AHTD, not that Rogers was negligent in its performance of the contract. Although Barker argues that she did plead negligence on the part of Rogers in its performance of the contract, from our careful review of her complaint we find that the only negligence referred to in the complaint was that Rogers was negligent in its application of Type 3 asphalt. Nowhere in the complaint did Barker allege that Rogers was negligent in the performance of the contract other than by its use of Type 3 asphalt.

■ Barker also contends that the court was in error in granting summary judgment because genuine issues of material fact remain. These issues include whether Rogers had a duty to warn of imminently dangerous conditions, whether it had a duty to correct a dangerous situation it created, whether it used the appropriate type of asphalt, and whether it strictly adhered to the contract. As stated above, because Rogers strictly adhered to the contract specifications, it cannot be held liable. Therefore, there are no genuine issues of material fact on which a jury could determine that Rogers was liable. Without Barker's contention that Rogers negligently performed the contract, the only issue before the jury would be whether Rogers complied with the contract. In its motion for summary judgment, evidence in the form of affidavits was introduced that showed Rogers had in fact strictly complied with the contract. Barker did not meet proof with proof and has presented no evidence that Rogers did anything other than comply with the contract.

Finally, Barker argues that if even this court should find that the trial court did not err in granting summary judgment, we should modify the trial court's judgment, which dismissed Barker's complaint with prejudice, to a dismissal without prejudice so as to allow her to amend her complaint to plead with specificity that Barker was negligent in the performance of the contract. She cites *Bushong v. Garman Co.*, 311 Ark. 228, 235, 843 S.W.2d 807, 811 (1992), for support of her position that "when summary judgment is granted because of a failure to state a claim, the dismissal should be without prejudice in order to afford the plaintiff-appellant a chance to plead further."

In *Bushong*, the trial court granted summary judgment, with prejudice, upon finding that there was no genuine issue of any material fact. On appeal, the supreme court concluded that the trial court's grant of summary judgment was error but, rather, that the case should have been dismissed because of the failure of the complaint to state a claim upon which relief could be granted. In modifying the trial court's summary judgment order to be a dismissal for failure to state a claim, the supreme court also modified the order to provide that the dismissal would be without prejudice.

We do not believe that *Bushong* is applicable to this case, and we disagree with Barker's argument. Rule 52 of the Arkansas Rules of Civil Procedure states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a *judgment as a matter of law.* (Emphasis added.)

In *Bushong*, the court made a distinction between the grant of summary judgment for failure to state a claim and grant of summary judgment when there is no genuine issue of material fact. Unlike in *Bushong*, we hold that the trial court in the case at bar did not err in granting summary judgment because we agree that, based on the pleadings filed, along with the affidavits submitted by Rogers with its motion for summary judgment, there are no genuine issues of material fact and that Rogers is entitled to judgment as a matter of law.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.