Ronnie D. FORD, Individually and as Personal Representative of
the Estate of Ernie C. Ford, Deceased, and Terry G. Ford *v.*
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Internal Medicine Associates, P.A.,
Surgical Clinic of Northeast Arkansas, P.A.,
and Dr. Scott M. Kelly

99-587                                                  5 S.W.3d 460

Supreme Court of Arkansas
Opinion delivered December 9, 1999

*Blair Arnold*; and *William T. Bernard*, for appellant.

*Barrett & Deacon*, by: *D.P. Marshall Jr.* and *James D. Bradbury*, for appellee St. Paul Fire & Marine Insurance Company.

*Friday, Eldredge & Clark*, by: *William M. Griffin III* and *Joseph P. McKay*, for appellee Internal Medicine Associates, P.A.

*Womack, Landis, Phelps, McNeill & McDaniel*, by *Paul D. McNeill* and *Jeffrey L. Singleton*, for appellee Surgical Clinic of Northeast Arkansas, P.A.

*Lyons, Emerson & Cone, P.L.C.*, by: *Jim Lyons*, for appellee Dr. Scott Kelly.

RAY THORNTON, Justice. Appellants Ronnie D. Ford and Terry G. Ford bring this wrongful-death action individually and on behalf of their deceased father, Ernie C. Ford, against the four appellees: St. Paul Fire & Marine Insurance Company, Internal Medicine Associates, P.A., Surgical Clinic of Northeast Arkansas, P.A., and Dr. Scott Kelly. Appellants contended that the appellees' delay in performing surgery on Mr. Ford's ruptured aneurysm constituted a "lost chance" and should be recognized as an alternative theory of recovery for medical malpractice. The trial court granted summary judgment in favor of all four appellees because there was no expert testimony that Mr. Ford would have survived had medical intervention been rendered earlier, and therefore, the element of proximate cause was not established. Absent a showing of proximate cause, we do not decide the question of the applicability of the "lost chance" doctrine. We affirm the trial court's ruling.

On January 3, 1996, at approximately 8:30 p.m., Mr. Ford suffered the onset of lower abdominal pain. At approximately 10:00

p.m., he arrived at the emergency room at St. Bernard's Regional Medical Center. Upon admission to the hospital, Mr. Ford was examined by appellee, Dr. Scott M. Kelly. After talking with Mr. Ford and after initial x-ray testing, Dr. Kelly diagnosed several medical problems as material to the abdominal pain. These diagnoses included an abdominal aortic aneurysm, dehydration, renal insufficiency, and an active infection.

At approximately 2:30 a.m., the patient was transferred to the care of Dr. Robert Burns, the on-call physician for Mr. Ford's primary-care physician and agent of appellee, Internal Medicine Associates of Jonesboro, P.A. Dr. Burns ordered Mr. Ford's admission and proceeded to the emergency room to evaluate him. After noting that the patient was in less pain than reported on admission, Dr. Burns consulted with Dr. Russell Degges, an agent of appellee, Surgical Clinic of Arkansas P.A., who agreed with a plan of action, which included a further assessment of the abdominal aortic aneurysm by ultrasound.

At approximately 5 a.m., Dr. Burns ordered an ultrasound for Mr. Ford, who had been placed in the Women's Diagnostic Center wing at the hospital where his blood pressure and pulse rate continued to be monitored. While awaiting the ultrasound, Mr. Ford's leaking aneurysm burst, sending him into shock. He was rushed to the emergency room where surgery was performed to repair the ruptured aneurysm. Mr. Ford, who was seventy-three years old, survived the surgery but died later that day.

Summary judgment is appropriate when there is no genuine question of material fact to be litigated. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 660 (1997). Once the moving party established a *prima facie* entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet "proof with proof" and demonstrate a genuine issue of material fact. *Sanders v. Bailey Community Human Services Public Facilities Board*, 330 Ark. 675, 956 S.W.2d 187 (1997). On appellate review, we determine if summary judgment was proper based on whether the evidence presented by the movant left a material question of fact

unanswered. *Keller v. Safeco Ins. Co. of Am.*, 317 Ark. 308, 877 S.W.2d 90 (1994). Any doubts and inferences must be resolved against the moving party. *Kelly v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997).

■ The Arkansas Medical Malpractice Act is codified at Ark. Code Ann. § 16-114-201 through 209 (1987). In *Blankenship v. Burnett*, 304 Ark. 469, 803 S.W.2d 539 (1991), we stated:

> Section 16-114-206(a) specifies that in any action for medical injury, the plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the plaintiff's injuries.

*Id.* The statute implements the traditional tort standard of requiring proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred.

■ We have held that the proof required to survive a motion for summary judgment in a medical malpractice case must be in the form of expert testimony. *Oglesby v. Baptist Medical System*, 319 Ark. 280, 891 S.W.2d 48 (1995). It is simply not enough for an expert to opine that there was negligence which was the proximate cause of the alleged damages. *Aetna Casualty & Surety Co. v. Pilcher*, 244 Ark. 11, 424 S.W.2d 181 (1968). The opinion must be stated within a reasonable degree of medical certainty or probability. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992).

When summary-judgment motions are at issue, we must view the evidence in the light most favorable to the party opposing the motion, but there is nothing before us to suggest that any genuine issue of material fact was left unanswered. Two surgeons, Dr. Degges and his colleague, Dr. Ken Jones, supplied affidavits with the following information:

1. Repairing an abdominal aortic aneurysm is risky at best;

2. Mr. Ford's age, active infection, renal insufficiency, and hypertension make his risks even higher than normal.

Both experts further testified by affidavit that Mr. Ford probably would not have survived the surgery had it been performed earlier.

The testimony from appellants' expert witness, Dr. Charles Van Way, may be summarized as follows:

1. He could not say with any degree of medical certainty that, if operated on when he arrived at the hospital, Mr. Ford would have survived;

2. Mr. Ford had higher risks than usual because of his age, renal impairment, and other medical problems;

3. The overall success rate is 50/50 for surgery on patients whose aneurysm has ruptured, and the chances of survival decline the longer the aneurysm bleeds;

4. He did not think that anyone could determine the risks of Mr. Ford, or whether he would have survived if operated on sooner.

Dr. Van Way concluded that he could not state with any reasonable degree of medical certainty or probability that Mr. Ford would have survived an earlier surgery.

Appellants did not offer any additional affidavits or evidence in opposition to the summary judgment. Under Arkansas case law concerning the opposing party's burden in summary-judgment proceedings, appellants did not meet the "proof with proof" as to a genuine issue of material fact left unanswered. Rather, they relied solely on the testimony of Dr. Charles Van Way, who could not say with a reasonable degree of medical certainty that, but for the delay of the surgery, Mr. Ford would have survived. Although Mr. Ford did not undergo surgery for a ruptured aneurysm for approximately eight hours after his admittance to the hospital, no evidence was provided that Mr. Ford's eight-hour delay was unusual, or that appellees failed to meet the appropriate standard of care.

Dr. Van Way further testified that Mr. Ford's condition was much worse than that of an average patient. Dr. Van Way testified that Mr. Ford had hypertension, a history of atherosclerosis, prior carotid artery surgery, the possible presence of a urinary tract infection, a prior history of smoking, a possible chronic obstructive pulmonary disease, and renal impairment. According to Dr. Van Way, the renal impairment alone would have doubled the risk of surgery. Under these circumstances, there was no proof that a delay in performing surgery was the proximate cause of Mr. Ford's death.

■ Given appellants' failure to meet "proof with proof," coupled with three expert witnesses who did not establish proximate cause, the trial court correctly granted summary judgment in favor of appellees. Accordingly, the trial court's order awarding summary judgment is affirmed.

Affirmed.